# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Gerardo Espinosa Guerra,

                Plaintiff,

v.

Rockdale County, Georgia, et al.,

                Defendants.

_____/

Case No. 1:16-cv-04656

Michael L. Brown
United States District Judge

## <u>OPINION & ORDER</u>

Plaintiff claims he was wrongfully arrested and detained for sixteen days based on a mistaken identification by members of the Rockdale County Sheriff's Office and the City of Franklin Police Department. He filed suit, alleging violations of his constitutional rights and Georgia state law. Defendant City of Franklin, Tennessee, and Defendant Officers Tommy D. Justus, Becky Porter, and Chad D. Black ("Tennessee Defendants") moved to dismiss Plaintiff's amended complaint. (Dkt. 37.) Defendant Rockdale County, Georgia, Defendant Rockdale County Sheriff Eric J. Levett, and Defendant Officers Brandon W. Douglas and Jonathan W. Baker ("Rockdale Defendants") moved for partial judgment

on the pleadings.  (Dkt. 36.)  The Court grants in part and denies in part

both motions and allows the surviving claims to proceed.

## I.   Background

In January 2015, police officers with the City of Franklin Police

Department (including Defendant Black as the lead investigator) began

investigating criminal activity at a local hotel.  (Dkt. 33 ¶ 40.)  They

identified and photographed five suspects, including an individual known

as Gerardo Emmanuel Espinosa Zamudio.  (*Id.* ¶¶ 32–36.)  Although

police made no arrests at the time, they later obtained an indictment

against Zamudio for aggravated assault and false imprisonment.  (*Id.*

¶ 39.)  Franklin police placed a warrant for his arrest in a nationwide

database.  (*Id.* ¶ 40.)

Plaintiff Guerra was not involved in the criminal activity at the

Franklin hotel.  On November 12, 2015, he was at his home in Conyers,

Georgia, minding his own business when two officers with the Rockdale

Sheriff's Office knocked on his door.  (*Id.* ¶ 43.)  They were looking for

Plaintiff's stepfather to ask him questions about a car he had previously

owned, again totally unrelated to anything that happened in Franklin.

(*Id.*)  While trying to help the officers, Plaintiff provided his Georgia

driver's license. (*Id.* ¶ 46.) The officers somehow thought Plaintiff might be the subject of the Tennessee warrant and placed him in the back of their squad car while investigating. (*Id.* ¶ 47.) They soon realized he was not the suspect in the warrant and let him go, encouraging him to "clear up the matter" so he would not be mistakenly arrested in the future. (*Id.* ¶ 49.) Plaintiff — apparently accepting that advice — went to the Rockdale County Sheriff's Office a couple of days later and provided his fingerprints, social security number, driver's license, and other identifying information. (*Id.* ¶¶ 49–50, 52.)

On November 16, 2015, someone in the Rockdale County Sheriff's Office sent a copy of Plaintiff's driver's license photograph to Defendant Porter, with the Franklin Police Department. (*Id.* ¶ 54.) Defendant Porter attempted to compare Plaintiff's picture with pictures of suspects at the Franklin hotel that police had taken months earlier. (*Id.* ¶ 55.) She was unable to locate the photographs of the individuals involved in the incident, however, although Plaintiff alleges such photographs were in the file at the time. (*Id.*) As a result, Defendant Porter was unable to confirm if Plaintiff was the individual sought in the Tennessee warrant. (*Id.*) A couple of days later, Defendant Porter showed Plaintiff's

photograph to Defendant Black, who had been part of the original investigation at the hotel. (*Id.* ¶ 60.) Defendant Black — looking only at the photograph of Plaintiff and comparing it to his memory of the suspect from months before — confirmed that Plaintiff was the individual sought by the Tennessee warrant and asked the Rockdale officers to arrest him. (*Id.* ¶ 63.)

Defendant Baker called Plaintiff and asked him to come back to the sheriff's office. (*Id.* ¶ 71.) Plaintiff did. (*Id.*) Rockdale Officers Baker and Douglas arrested Plaintiff, telling him the Franklin officers had identified him as the suspect involved in the assault at the hotel. (*Id.* ¶ 72.) Defendant Officer Douglas obtained an arrest warrant the next day, charging Plaintiff with being a fugitive from justice. (*Id.* ¶¶ 78–79.) Plaintiff remained in jail for sixteen days before police finally determined that he was not the man sought in the Tennessee warrant and dismissed the charges. (*Id.* ¶ 86.)

Plaintiff asserts claims against defendants in Georgia and Tennessee. He sued Rockdale County, Georgia, Rockdale County Sheriff Eric J. Levett, and Rockdale Sheriff Officers Johnathan W. Baker and Brandon W. Douglas. He also sued the City of Franklin, Tennessee, and

Franklin Police Department Officers Tommy D. Justus, Chad D. Black, and Becky Porter.[1]  He brings federal claims of false arrest (Count One) and malicious prosecution/false imprisonment (Count Two) under 42 U.S.C. § 1983 and Georgia state-law claims of false arrest (Count Three), malicious prosecution (Count Four), false imprisonment (Count Five), and negligent hiring, retention, and training (Count Six).  The Rockdale Defendants filed a motion for partial judgment on the pleadings and the Tennessee Defendants filed a motion to dismiss.  (Dkts. 36; 37.)

## II.    Legal Standard

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."

---

[1] Plaintiff originally filed suit in the Superior Court of Rockdale County, Georgia, but Defendants removed the case to federal court.  (Dkt. 1.)

*Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).

When considering a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), a court is guided "by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018).

While parties usually raise the defense of qualified immunity at summary judgment, a party may nevertheless assert the defense at the outset of the litigation on a motion to dismiss. *See Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). A district court grants such a motion if "the complaint fails to allege the violation of a clearly established constitutional right." *Id.* (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Indeed, the early assertion and (if appropriate) resolution of qualified immunity effectuates the principal that qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see also Andrews v. Scott*, 729 F. App'x 804, 808 (11th Cir. 2018) ("Once the defendants advance the affirmative defense of qualified immunity, the complaint must be dismissed, unless the plaintiff's allegations state

a claim of violation of clearly established law." (internal quotation marks omitted)).

## III. Discussion

The Court notes from the outset that, notwithstanding Plaintiff's amendment to his complaint, none of the counts clearly delineates against which of the Defendants the claims are asserted. The Court has tried to discern Plaintiff's intent through his mention of various Defendants in each of the counts. The Court believes it has addressed all outstanding issues.

### A. The Rockdale Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 36)

#### 1. The Court Grants the Rockdale Defendants' Motion as to Count One.

The Rockdale Defendants (that is, Rockdale County Sheriff Levett and Rockdale County Sheriff Officers Baker and Douglas) move for judgment on the pleadings on Count One against them in their individual capacities. (Dkt. 36-1 at 3.) They argue that, because they arrested Plaintiff "under an arrest warrant from Tennessee with verification from the agency that obtained the warrant," Plaintiff cannot bring a claim for false arrest. (*Id.* at 4.) In support of this argument, they cite the

Eleventh Circuit's opinion in *Carter v. Gore*, holding that "[t]he issuance of a warrant — even an invalid one . . . — constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest." 557 F. App'x 904, 906 (11th Cir. 2014). Plaintiff claims this rule does not apply because he was not the individual named in the warrant.

Plaintiff is correct but for a different reason. Contrary to the Rockdale Defendants' assertion, Plaintiff does not allege in the amended complaint that the Rockdale Defendants arrested him pursuant to the Tennessee warrant. He claims they arrested him for the "offense of fugitive from justice, O.C.G.A. §17-13-33." (Dkt. 33 ¶ 79.) He claims the officers arrested him on November 18, 2015, and the next day, secured a warrant for violating Georgia law. (*Id.* ¶¶ 71, 78.) This would mean that Plaintiff alleges the original arrest was made without probable cause. Indeed, as part of his false arrest claim, Plaintiff alleges that the Rockdale Defendants "had no arguable probable cause, much less probable cause" to swear out the warrant for his arrest for being a fugitive from justice. (*Id.* ¶ 103.) *Carter v. Gore* thus does not bar Plaintiff's § 1983 false arrest claim.

Alternatively, the Rockdale Defendants argue that they are entitled to qualified immunity because an officer who acts upon information from another officer about the identity of a wanted suspect has probable cause and does not commit false arrest as a matter of law. (Dkt. 36-1 at 4–5.) Defendants cite no case that establishes this sweeping legal assertion. The Court nevertheless concludes they are entitled to qualified immunity.

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted). So "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). When properly applied, it "protects all but the plainly incompetent

or those who knowingly violate the law." *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010). A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. There seems to be no question that the Rockdale Defendants acted within the scope of their discretionary authority when arresting Plaintiff. *See, e.g.*, *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect). Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to them.

The qualified immunity analysis presents two questions: first, whether the allegations, taken as true, establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established, [the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). The burden thus lies with Plaintiff to show the Rockdale Defendants' actions violated a constitutional right and that the right was clearly established at the time of his arrest. *See Hadley*, 526 F.3d at 1329.

### a.  Constitutional Violation

Plaintiff sued the Rockdale Officers alleging they violated his Fourth Amendment rights by arresting him without probable cause. (Dkt. 33 ¶¶ 101–109.) "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami,* 382 F.3d 1220, 1226 (11th Cir. 2004). Probable cause to arrest exists when an arrest is objectively reasonable

based on the totality of the circumstances. *Id.* "This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotation marks omitted). Officers who make an arrest without probable cause are nonetheless entitled to qualified immunity if they had at least "arguable probable cause for the arrest." *Id.* at 1232. Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the defendant <u>could</u> have believed that probable cause existed to arrest." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (internal quotation marks omitted).

The Supreme Court has held that no constitutional violation arises from the mistaken arrest of one person (for whom no probable cause to arrest existed) based upon the misidentification of that person as a second person (for whom probable cause to arrest existed). *Hill v. California*, 401 U.S. 797, 802–03 (1971). The Eleventh Circuit has applied the same rule when police had a valid warrant for one person but mistakenly arrest someone else due to a misidentification. *Rodriguez v.*

*Farrell*, 280 F.3d 1341, 1345–46 (11th Cir. 2002). The same "reasonable mistake" must apply in this case: a hybrid of *Hill* and *Rodriguez*, involving a warrant for one person and a mistaken identification giving rise to probable cause to arrest another person as a fugitive.

Plaintiff's amended complaint alleges that a reasonable officer in the Rockdale Defendants' position "would have known that no arguable probable cause existed to support the issuance of an arrest warrant for Plaintiff." (Dkt. 33 ¶ 106.) While alleging the operative legal conclusion, Plaintiff also alleges facts that belie such a finding. He claims the Rockdale Defendants arrested him for being a fugitive from justice after the Tennessee Defendants confirmed he was the subject of their warrant. He claims the Rockdale Defendants sent the Tennessee Defendants a copy of his driver's license photo, that Defendant Porter initially failed to identify Plaintiff from that photo, but that Defendant Black later did so. (*Id.* ¶¶ 55–64.) Indeed, Plaintiff claims that the Tennessee Defendants assured the Rockdale Defendants that the "guy that had the [hotel] case" had reviewed Plaintiff's photo and said "that's him." (*Id.* ¶ 64.) Finally, Plaintiff alleges that the Tennessee Defendants asked the Rockdale

Defendants to arrest Plaintiff, assuring they would extradite Plaintiff to Tennessee.

Accepting the allegations in the complaint as true, the Rockdale Defendants had at least arguable probable cause to believe Plaintiff was a fugitive from Tennessee. They knew that the officer who investigated the hotel case (Defendant Black) had looked at Plaintiff's photo and confirmed Plaintiff was their fugitive. Plaintiff does not allege that the Rockdale Defendants had any reason to doubt the veracity or strength of Defendant Black's eye-witness identification. He sets forth actions that he took to cooperate with the police and the Tennessee officers' initial failure to identify him as the subject of their arrest warrant — all of which, he alleges, gave the Rockdale Defendants additional reason to pause before arresting him on the word of the Franklin officer. (*Id.* ¶¶ 49, 50, 52, 55, 56.) He also explains the actions he believes a reasonable officer would have taken before arresting him on the warrant given the particular facts in this case. (*Id.* ¶ 82.) But, even accepting all of this as true, the Rockdale Defendants' had eye-witness identification from the investigating officer. A reasonable officer in the same circumstances and possessing the same knowledge as these officers *could* have believed that

probable cause existed to arrest Plaintiff as a fugitive.  Plaintiff has thus failed to meet his burden to demonstrate a violation of his Fourth Amendment rights.

### b.    Clearly Established Law

Even if Plaintiff could show the Rockdale Defendants violated his constitutional rights by arresting him, he fails to meet his burden of showing they violated clearly established law.  The core question on this prong of the qualified immunity analysis is "whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted."  *Gates*, 884 F.3d at 1303 (emphasis removed).

A constitutional right is only clearly established for qualified immunity purposes if "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks omitted) (alteration adopted). Put differently, "existing precedent must have placed the statutory or constitutional question beyond debate" to give the official fair warning

that his conduct violated the law. *Id.*; *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc) ("The critical inquiry is whether the law provided [defendant officers] with fair warning that [their] conduct violated the Fourth Amendment." (internal quotation marks omitted)). The Supreme Court has explained that the question is "whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *See Saucier v. Katz*, 533 U.S. 194, 202 (2001). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*

A plaintiff typically shows that a defendant's conduct violated clearly established law by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296. While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin*, 642 F.3d at 1013.

In *White v. Pauly*, the Supreme Court reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" 137 S. Ct. 548, 552 (2017) (quoting *al-Kidd*, 563

U.S. at 742). The Supreme Court held that to defeat a claim of qualified immunity, a plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *Id.* "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers." *Id.* (internal quotation marks omitted). Instead, "the clearly established law must be 'particularized' to the facts of the case." *Id.* The Supreme Court has also explained that avoiding qualified immunity does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

Fair warning can also arise from two other sources. First, "[a]uthoritative judicial decisions may 'establish broad principles of law' that are clearly applicable to the conduct at issue." *Gates*, 884 F.3d at 1296 (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1209 (11th Cir. 2007)). Second, "it may be obvious from 'explicit statutory or constitutional statements' that conduct is unconstitutional." *Id.* (citing *Griffin Indus.*, 496 F.3d at 1208–09). Regardless of the method, "the preexisting law must make it obvious that the defendant's acts violated

the plaintiff's rights in the specific set of circumstances at issue." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). In this way, qualified immunity does what it should: it "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (internal quotation marks omitted) (alterations adopted).

As explained above, Plaintiff alleges the Rockdale Defendants arrested him based on an eye-witness identification from the officer who investigated the hotel incident. Plaintiff has not shown, and the Court is unable to find, any materially similar precedent that would "make it obvious" that the Rockdale Defendants' actions would violate Plaintiff's constitutional rights. Plaintiff cites *Cannon v. Macon County*, 1 F.3d 1558, 1561 (11th Cir. 1993). In that case, plaintiff alleged the defendant officers falsely imprisoned her in violation of her Fourteenth Amendment due process rights. *Id.* The Eleventh Circuit analyzed her claims under the "deliberate indifference" standard applicable to allegations of violations of substantive due process, not the arguable probable cause standard that applies here. *Id.* at 1563. Moreover, the officers in *Cannon*

detained the plaintiff based upon information in a law enforcement database, not an officer's eye-witness identification as in this case. *See id.* at 1564. *Cannon* would not have put the Rockdale Defendants on notice that they would violate Plaintiff's Fourth Amendment rights by arresting him on the word of a fellow law enforcement officer.

Plaintiff also cites *Holmes v. Kucynda*, 321 F.3d 1069, 1073 (11th Cir. 2003). But that case involved an arrest based on the plaintiff's "mere presence" in an apartment where drugs were located. *Id.* at 1081. Likewise, his reliance on *Kingsland v. City of Miami*, is misplaced as that case involved intentional falsification of evidence by police officers to support an arrest warrant in order to deflect blame from their fellow officer. *See* 382 F.3d 1220, 1223 (11th Cir. 2004). This case involves neither Plaintiff's mere presence at the scene of a crime nor allegations the Rockdale Defendants falsified evidence. Even at the motion to dismiss stage, Plaintiff has not met his burden to show that "every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664.

Admittedly, the Rockdale Defendants made a mistake, relying on bad information from another police officer to arrest Plaintiff for

something he did not do. "The rationale behind qualified immunity is that an officer who acts reasonably should not be held personally liable merely because it appears, in hindsight, that he might have made a mistake." *Gates*, 884 F.3d at 1298. Accordingly, the Court grants the Rockdale Defendants' motion for partial final judgment on the § 1983 false arrest claim in Count One.[2]

### 2. The Court Dismisses All Claims Against the Rockdale Defendants in their "Official Capacities."

Plaintiff asserts claims against most of the individual defendants in their individual and official capacities.[3] The Rockdale Defendants moved for judgment on the pleadings on all such official capacity claims on the basis of Eleventh Amendment immunity. They later concede they

---

[2] The Rockdale Defendants did not move for dismissal of Count Two against Defendant Douglas, so he and the federal claim against him must remain in the case regardless of the ruling on Count One. (*Id.*)

[3] In another example of poor drafting, Plaintiff fails to clarify which claims he asserts against which Defendants in their official capacities. Indeed, Plaintiff uses the term "official capacity" only in the caption to his amended complaint. The Court thus assumes Plaintiff seeks to assert such claims against all individual defendants (except Defendant Levett, as Plaintiff includes in the caption no reference to official capacity claims against him).

waived this defense by removing the case to federal court.  (Dkt. 49 at 7 n.2.)

Plaintiff nonetheless asks the Court to dismiss the state-law claims against Rockdale County and the individual Rockdale Defendants (Levett, Baker, and Douglas) in their official capacities on the basis of sovereign immunity.[4]  (Dkt. 46 at 10.)  The Court does so.[5]

The Court also dismisses the § 1983 claims in Counts One and Two against the individual Rockdale County Defendants in their official capacities.  A suit against a county sheriff or his deputies in their official capacity is effectively a suit against the governmental entity the sheriff or the deputies represent — in this case, the Rockdale County Sheriff's

---

[4] The Rockdale Defendants expressly did not move for judgment on the pleadings or to dismiss Plaintiff's related state-law claims against them in their individual capacities.  (Dkt. 36 at 2.)

[5] Since Plaintiff consents to dismissal of the state-law claims against Rockdale County, the Court need not address the Rockdale Defendants' contention that the County cannot be held vicariously liable for Defendants Baker and Douglas's conduct.  The Court nevertheless recognizes that "Georgia courts speak with unanimity in concluding" that counties cannot be held vicariously liable for the conduct of their sheriffs' deputies. *Manders v. Lee*, 338 F.3d 1304, 1326 (11th Cir. 2003) (collecting cases); *see, e.g.*, *Lowe v. Jones Cty.*, 499 S.E.2d 348, 373 (Ga. Ct. App. 1998) (noting that "because deputy sheriffs are employees of the sheriff, not the county, the county cannot be held vicariously liable as their principal").

Office.  *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (citing *McMillian v. Monroe Cty.,* 520 U.S. 781, 785 n.2 (1997)); *see also Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. . . . It is not a suit against the official personally, for the real party in interest is the entity."); *Lowe,* 499 S.E.2d at 373 (concluding "deputy sheriffs are employees of the sheriff, not the county, and the county cannot be held vicariously liable as their principal").

A plaintiff in a § 1983 action cannot rely on *respondeat superior* or vicarious liability theories to hold a county liable for the individual actions of its officers.  *City of Canton v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell v. N.Y. City Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978)). A county is only liable under § 1983 for actions for which it is actually responsible, meaning when a county's "official policy or custom" causes a constitutional violation.  *Monell*, 436 U.S. at 694–95.  This requires a plaintiff suing a county to show that the county "has authority and

responsibility over the government function in issue." *Grech v. Clayton Cty.*, 335 F.3d 1326, 1330 (11th Cir. 2003).

In this case, Plaintiff claims that Rockdale County is responsible for the decision by Defendant Douglas (and perhaps others) to arrest him based on what Plaintiff alleges was the absence of probable cause. Accepting these allegations as true, Plaintiff's allegations fail to state a claim as a matter of law. The Eleventh Circuit has held that the State of Georgia — not an individual county — has authority and control over sheriffs' law enforcement functions. *Id.* at 1332. In reaching this decision, the Eleventh Circuit analyzed Georgia law and noted that the Georgia Constitution created sheriffs' offices as separate constitutionally protected entities independent of individual counties. *Id.* at 1332–33. This means that sheriffs in Georgia act as agents of the State — not counties — in enforcing the laws and keeping the peace. *Id.* at 1333. Indeed, while the State has supervisory authority over sheriffs, an individual county has no control over its sheriff's law enforcement activities:

> In contrast to the State, counties have no authority or control over, and no role in, Georgia sheriffs' law enforcement function. Counties do not grant sheriffs their law enforcement powers, and neither prescribe nor control their law

> enforcement duties and policies. Counties also have no role in the training or supervision of the sheriff's deputies. Instead, sheriffs exercise authority over their deputies independent from the county.

*Id.* at 1336.  As a result of its analysis, the Eleventh Circuit held that Georgia sheriffs are not county policymakers when performing their law enforcement function.  *Id.* at 1343.  Plaintiff thus cannot assert § 1983 claims against Rockdale County arising from the law enforcement actions of the Rockdale Defendants.

Even if Rockdale County were the proper defendant, Plaintiff's allegations are still insufficient as a matter of law.  A county is liable under § 1983 only when its "official policy" causes the constitutional violation.  *Id.* at 1329 (citing *Marsh v. Butler Cty.,* 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc)).  So, to impose liability on a municipality, a plaintiff must show: (1) his or her constitutional rights were violated; (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) the policy or custom caused the violation.  *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Harris,* 489 U.S. at 388).

Plaintiff has failed to allege any causal link between a county policy and the alleged violation of his constitutional rights asserted in Counts

One and Two. In other words, he has not alleged that the Rockdale Defendants falsely arrested him or maliciously prosecuted him because of some county policy or custom. He claims in Counts One and Two that the Rockdale Defendants "were acting under color of state law and within their discretionary functions as employees or officer of" the County. (Dkt. 33 ¶¶ 102, 111.) Elsewhere in the amended complaint, he is critical of the Rockdale Defendants for not conducting a more thorough investigation before arresting him on the word of the Tennessee officer. (*Id.* ¶ 73.) But he does not allege that they did so pursuant to any county policy or custom. Similarly, he refers to Defendant Levett several times as a "policy maker for the County." (*Id.* ¶¶ 77, 82, 85.) But he never alleges that Defendant Levett enacted a policy that led to his arrest. Even accepting all Plaintiff's allegations as true, Counts One and Two do not state a claim against Rockdale County that is plausible on its face. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1329 (11th Cir. 2015) (affirming dismissal of *Monell* claim where complaint contained no plausible allegations of unconstitutional municipal policy); *Searcy v. Ben Hill Cty. Sch. Dist.*, 22 F. Supp. 3d 1333, 1340–41 (M.D. Ga. 2014) (dismissing *Monell* claim for failure to identify a county

"custom or policy that caused the constitutional violation"); *Lawrence v. West Publ'g Corp.*, No. 1:15-CV-3341-MHC, 2016 WL 4257741, at *8 (N.D. Ga. June 17, 2016) (granting motion to dismiss where "Plaintiff fails to allege any official custom, practice, or policy on the part of [the] County that resulted in the deprivation of her constitutional rights").

The Court thus dismisses Counts One and Two against the Rockdale Defendants in their official capacities.[6]

### 3. The Court Dismisses the State-Law Claims Against Defendant Levett Based on Georgia Official Immunity.

Defendant Levett has also moved for judgment on the pleadings as to the state-law claims in Counts Three, Four, and Five on the basis of official immunity. Georgia law immunizes Georgia government officials "from suit and liability unless they 'negligently perform a ministerial act or act with actual malice or an intent to injure when performing a discretionary act.'" *Speight v. Griggs*, 579 F. App'x 757, 759 (11th Cir.

---

[6] Plaintiff does not appear to name Rockdale County as a defendant in Counts One or Two. He identified only the "individual Defendants." (Dkt. 33 ¶¶ 102, 111.) But, even if he had, any such claims would fail for the same reason. Counts One and Two may proceed only against the specified individual Defendants in their individual capacities.

2014) (citing *Roper v. Greenway*, 751 S.E.2d 351, 352 (Ga. 2013) and GA. CONST. art. I, § II, par. IX(d)).

Plaintiff does not contest Defendant Levett's assertion that the decision to arrest an individual is a discretionary act. Nor could he. *See Gates*, 884 F.3d at 1297 (finding officers performed discretionary act within the scope of their authority when arresting plaintiff); *Marshall v. Browning*, 712 S.E.2d 71, 73 (Ga. Ct. App. 2011) (concluding decision to arrest is act of discretionary authority). Defendant Levett thus can be liable on Plaintiff's state-law claims only if he acted with "actual malice" or "actual intent to cause injury" as necessary to overcome official immunity. *See Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). The Supreme Court of Georgia has defined actual malice in the context of official immunity to mean a "deliberate intention to do a wrongful act" or "an actual intent to cause injury." *Id.* Actual malice requires more than evidence the defendant acted with "ill will" or "the reckless disregard for the rights or safety of others." *West v. Davis,* 767 F.3d 1063, 1073 (11th Cir. 2018) (quoting *Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007)). The phrase "actual intent to cause injury" means "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly

resulting in the claimed injury." *Id.* (quoting *Kidd v. Coates,* 518 S.E.2d 124, 125 (Ga. 1999)).

None of the facts alleged in the amended complaint support a plausible claim that Defendant Levett acted with actual malice or the actual intent to injure Plaintiff as the Georgia Supreme Court has defined those terms. Beyond the conclusory allegation that "[t]he acts and omissions of the individual Defendants" were done with malice, Plaintiff does not claim Defendant Levett had any personal involvement in his deputies' investigation or decision to arrest him. (*See* Dkt. 33 ¶ 119.) Instead, he claims Defendant Levett is ultimately responsible for his deputies' conduct. Plaintiff claims, for example, Defendant Levett "delegated responsibility for investigating the warrant to [Defendants] Baker and Douglas" and that the deputies acted "pursuant to the authority delegated to them by Sheriff Levett." (*Id.* ¶¶ 51, 82.) Even if true, these allegations do not establish a plausible claim that Defendant Levett acted with actual malice toward Plaintiff or the intent to harm him. The other specific allegations against Defendant Levett are similarly insufficient. He claims, for example, that "[p]ursuant to his final policy making authority for the County, [Defendant] Levett

approved [Defendant] Baker [sic] and Douglas' plan to swear out an arrest warrant for Plaintiff." (*Id.* ¶ 77.) Plaintiff does not, however, allege that Defendant Levett knew his deputies' assessment of probable cause was deficient, was aware of their investigation, or otherwise acted with either actual malice towards him or the intent to injure him when Defendant Levett approved their "plan" to obtain an arrest warrant. Last, Plaintiff alleges that "as a final policy maker for the County, Sheriff Levett adopted the unconstitutional acts of Baker and Douglas, as well as the basis for committing those acts." (*Id.* ¶ 85.) An allegation that Defendant Levett is somehow vicariously liable for his deputies' conduct because of his position certainly does not allege actual malice or intent to harm.

Rather than pointing to specific allegations of malice or intent to injure in his amended complaint, Plaintiff claims that malice may be presumed from an arrest without probable cause. (Dkt. 46 at 7.) While such an inference may support a malicious prosecution charge, the mere allegation of an arrest without probable cause is insufficient to assert malice so as to defeat Georgia official immunity. *Marshall*, 712 S.E.2d at 73 (holding that the issue "is not whether [defendant] acted maliciously

for purposes of the tort of malicious prosecution, but . . . whether she acted with *actual* malice that would exempt her from official immunity" (alterations adopted)).  To defeat official immunity under Georgia law, Plaintiff must allege facts supporting an inference that Defendant Levett acted with actual malice or intent to injure.  He failed to do this, and Defendant Levett remains protected by official immunity under Georgia law.  The Court dismisses the individual capacity claims against Defendant Levett in Counts Three, Four, and Five.  As the Court has now dismissed all claims against Defendant Sheriff Levett, the Court dismisses him from this case.

### 4.  The Court Dismisses All Claims Against Rockdale County.

Plaintiff asserts claims against Rockdale County in Counts Three, Four, Five, and Six.  In his response brief, Plaintiff asks the Court to grant Defendants' motion in part and dismiss his state-law claims against Rockdale County.  (Dkt. 46 at 10 ("Plaintiff respectfully requests that the Court grant the Rockdale Defendants' Motion to the extent it seeks dismissal of Plaintiff's state law claims against Rockdale County.").)  The Court grants Plaintiff's request and dismisses all state-law claims against Rockdale County.  Because Plaintiff does not name

Rockdale County in either of the federal claims — as far as the Court can discern — the Court dismisses Rockdale County as a party defendant in this matter.

## B. Tennessee Defendants' Motion to Dismiss under 12(b)(6) (Dkt. 37)

### 1. The Court Dismisses All Claims Against Tennessee Defendant Tommy D. Justus.

Plaintiff asserts claims against Tennessee Defendant Justus in Counts One, Three, Four, and Five. Defendant Justus moved to dismiss these claims as insufficiently pled under Federal Rule of Civil Procedure 12(b)(6). He is correct.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The Supreme Court has also explained that the Federal Rules demand more from a plaintiff "than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. The complaint must provide each defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993)

(citation omitted). Plaintiff fails to do so here in regard to Defendant Justus.

Plaintiff alleges Defendant Justus worked for the Franklin Police Department, supervised Defendant Officers Porter and Black, and was aware of their actions. (Dkt. 33 ¶¶ 25–26.) Of course, that allegation is not enough to state a claim against Defendant Justus. After all, "[i]t is well-established that § 1983 claims may not be brought against supervisory officials on the basis of vicarious liability or *respondeat superior*." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009). A supervisor is liable under § 1983 only when the supervisor "personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." *Id.* at 1180–81.

Plaintiff makes no such allegation anywhere in his amended complaint. Indeed, he fails to explain how Defendant Justus was involved in the alleged misconduct. Plaintiff lays out his factual allegations in paragraphs 31 through 72 of his amended complaint, beginning with the January 20, 2015, incident in Tennessee and ending with his arrest in Rockdale County. He never mentions Defendant

Justus in this recitation. He never alleges that Defendant Justus did anything related to him, failed to do something related to him, or participated in anyone else's conduct related to him. He does not allege any connection between something Defendant Justus allegedly did and the other officers' decision to arrest him. Aside from the conclusory allegation that he was aware of his subordinates' actions, Plaintiff does not allege any additional facts to explain how Defendant Justus partook in the misidentification.

He provides no better specificity in the individual counts. Instead of explaining what he claims Defendant Justus did to violate his constitutional rights or Georgia law, he merely lumps Defendant Justus into a general allegation against all defendants. (*See* Dkt. 33 ¶ 75 ("All officers involved in the identification of Plaintiff as the individual sought in the Tennessee Warrant, including, but not limited to, Justus, Black, and Porter, engaged in [c]onstitutionally deficient conduct.").) The Federal Rules, however, "do not permit a party to aggregate allegations against several defendants in a single, unspecific statement, but instead require the pleader to identify (albeit generally) the conduct of *each* defendant giving rise to his claims." *Parker v. Brush Wellman, Inc.*, 377

F. Supp. 2d 1290, 1294 (N.D. Ga. 2005); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (affirming dismissal of complaint that was "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged").

The Court finds that the amended complaint fails to provide Defendant Justus fair warning of what Plaintiff claims he did. The Court dismisses Counts One, Three, Four, and Five against Defendant Justus and terminates him as a party defendant in this matter.

### 2. The Court Grants the Tennessee Defendants' Motion to Dismiss the Individual Claims in Count One.

Tennessee Defendants Black and Porter claim they are entitled to qualified immunity on Plaintiff's § 1983 claim for false arrest in Count One. The Court agrees.

Plaintiff alleges that Defendant Porter relied upon information he received from Defendant Black in telling the Rockdale Defendants that Plaintiff was the subject of their hotel investigation and prosecution. (Dkt. 33 ¶¶ 61–64.) Plaintiff does not allege that Defendant Porter had any reason to question the veracity or reliability of that identification. So, the analysis outlined above for the Rockdale Defendants applies to

Defendant Porter. She is entitled to qualified immunity on both prongs of the analysis.

Defendant Black, however, did not rely upon information from another officer. According to the amended complaint, he made the false identification himself, based only on his memory of the man he saw at the hotel. Thus he cannot argue that he had arguable probable cause to arrest Plaintiff based on reliance from an eye-witness, as the other Defendants can. But, Plaintiff has still failed to identify materially similar precedent that would have provided Defendant Black "fair warning" that he could not rely upon that memory in seeking Plaintiff's arrest. A plaintiff must "identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552. Plaintiff has not done so.

Plaintiff also does not allege that Defendant Black deliberately chose to ignore exculpatory evidence or fabricated evidence or falsified any facts to secure his arrest. The cases Plaintiff cites are thus inapposite. Because Plaintiff has failed to demonstrate that the unlawfulness of the conduct was apparent from pre-existing law at the

time of his arrest, the Court grants Defendant Black's motion to dismiss Count One against him in his individual capacity.

### 3. The Court Dismisses the Federal Claims in Counts One and Two Against the Tennessee Defendants in their Official Capacities.

It does not appear Plaintiff intended to assert Counts One or Two against the City of Franklin or against the individual Tennessee Defendants in their official capacities. But, if he did, the Court dismisses those claims.

As explained above, in *Monell*, the Supreme Court held that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. 436 U.S. at 694–95. *Respondeat superior* or vicarious liability will not attach under § 1983. *Monell,* 436 U.S. at 692. It is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983. Just as Plaintiff failed to allege a Rockdale County policy or custom that he claims led to the violation of his constitutional rights, so too has he failed to identify any such policy or custom for the City of Franklin. The Court thus dismisses all potential federal claims against Defendant City of Franklin.

For the same reason the Court dismissed the claims in Counts One and Two against the individual Rockdale County Defendants in their official capacities, the Court dismisses those claims against the individual Tennessee Defendants.

### 4. The Court Dismisses the State-Law Claims in Counts Three, Four, and Five Against Defendant City of Franklin.

Defendant City of Franklin contends that it is entitled to immunity from Plaintiff's state-law claims under the Tennessee Government Tort Liability Act ("GTLA"). TENN. CODE ANN. § 29–20–205. The GTLA protects Tennessee governmental entities and bars claims against them for the actions of their employees "if the injury arises out of . . . [t]he exercise or performance or the failure to exercise or perform a discretionary function" or "false imprisonment . . ., false arrest, malicious prosecution, . . . or civil rights." § 29–20–205(1), (2). Plaintiff counters that any Tennessee immunities are inapplicable to this action because "[w]hen foreign states engage in business in another state, they do so as any other entity and not with sovereign immunity." (Dkt. 47 at 9 (citing *Georgia v. City of Chattanooga*, 264 U.S. 472 (1924)).) After careful

consideration, the Court finds that principles of comity warrant the applicability of the Tennessee GTLA to these Tennessee Defendants.

Generally, a court applies the substantive law of the forum state — in this case, the substantive law of the State of Georgia. A court, however, may instead apply another state's law on the basis of comity, provided that the application of that law is not contrary to the policy of Georgia. *See Karimi v. Crowley*, 324 S.E.2d 583, 584 (Ga. Ct. App. 1984) (noting that "the laws of other states have no force in Georgia except on principles of comity and so long as their enforcement is not contrary to the policy of this State" (internal quotation marks omitted)). "Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. Courts extend immunity as a matter of comity to foster cooperation, promote harmony, and build goodwill." *Univ. of Iowa Press v. Urrea*, 440 S.E.2d 203, 204 (Ga. Ct. App. 1993) (quoting *Lee v. Miller Cty.*, 800 F.2d 1372, 1375 (5th Cir. 1986)).

"As a general rule, however, this court will not enforce the laws of another state as a matter of comity if they are contrary to the public policy of this state." *Id.* at 205 (citing GA. CODE ANN. § 1–3–9). Georgia

has a nearly identical tort liability limitation statute. GA. CODE ANN. § 50–21–24. The Georgia provision limits liability for claims of false imprisonment, false arrest, and malicious prosecution, just like the Tennessee statute. *See* § 50–21–24(7). The Court, therefore, finds that application of the Tennessee statute on the basis of comity does not offend Georgia policy, as Georgia itself has already enacted a virtually identical statute. *Cf. Urrea*, 440 S.E.2d at 204 ("In discussing comity in the context of sovereign immunity, the Supreme Court counseled: 'It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so.'" (internal quotation marks omitted)).

Tennessee's GTLA eliminates immunity from suit for government entities "for injury proximately caused by a negligent act or omission of any employee within the scope of his employment." TENN. CODE ANN. § 29–20–205. The statute, however, provides a long list of exceptions where the government entity remains immune from suit, including false imprisonment, false arrest, and malicious prosecution. TENN. CODE ANN. § 29–20–205(2). The Court finds that, based on the application of Tennessee's GTLA, the City of Franklin is immune from suit for

Plaintiff's state-law claims of false arrest, malicious prosecution, and false imprisonment.  The Court therefore dismisses Plaintiff's state-law claims against the City of Franklin in Counts Three, Four, and Five.

### 5. The Court Denies the Motion as to Plaintiff's State-Law Claims Against the Individual Tennessee Defendants.

The Tennessee Defendants argue they are immune from suit in their individual capacities under the public duty doctrine.  (Dkt. 37-1 at 19.)  Plaintiff counters that Tennessee-based immunities do not apply in this action and, even if they did, the public duty doctrine would not protect the individual Tennessee Defendants.

The public duty doctrine is not applicable here.  Typically, the doctrine "shields a public employee from suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 1995).  Plaintiff's state-law claims here (false arrest, malicious prosecution, and false imprisonment) are not the sort of claims the doctrine shields.  Instead, that doctrine tends to protect government officials from claims of injuries specifically due to negligence.  *See, e.g.*, *Matthews v. Pickett Cty.*, 996 S.W.2d 162, 163 (Tenn. 1999) (discussing Tennessee public duty doctrine in context of

negligence action); *City of Rome v. Jordan*, 426 S.E.2d 861, 863 (Ga. 1993) (discussing Georgia public duty doctrine in context of negligence for nonfeasance of police department). Plaintiff claims the Tennessee Defendants violated three separate Georgia statutes, not a "duty owed to the public at large." The Court thus finds the public duty doctrine, either based on Georgia law or Tennessee law, inapplicable.

### 6. The Court Dismisses the Negligent Hiring, Retention, and Training Claim in Count Six Against Defendant City of Franklin.

In Count Six, Plaintiff alleges claims against Defendants Rockdale County and the City of Franklin, asserting that both municipal entities failed to properly train and supervise their employees or maintain proper hiring standards because the municipalities "knew or should have known [the individual defendants] were likely to engage in constitutionally deficient criminal investigations." (Dkt. 33 ¶¶ 141–147.)

Because of the posture of this case, the Court reviews the amended complaint "as if all of the allegations contained therein are true." *See Migut v. Flynn*, 131 F. App'x 262, 265 n.1 (11th Cir. 2005) (per curiam); *Cottone v. Jenne*, 326 F.3d 1352, 1355 & n.1 (11th Cir. 2003) ("Because we must accept the allegations of plaintiff's amended complaint as true,

what we set out in this opinion as 'the facts' for Rule 12(b)(6) purposes may not be the actual facts.").

As with the application of the Tennessee GTLA above, the statute similarly protects the City of Franklin under the discretionary function exception. *See* TENN. CODE ANN. § 29–20–205(1). Implementing policy, supervising officers, and training all rise to the level of planning or policy-making and are thus discretionary acts that do not subject the City to liability. *See Savage v. City of Memphis*, 620 F. App'x 425, 429 (6th Cir. 2015) (finding that under Tennessee law, city's training program for its police officers was discretionary function, and thus wrongful death suit alleging that it negligently failed to train, supervise, and discipline its police officers fell within GTLA's discretionary function exception). The Court thus dismisses Count Six against Defendant City of Franklin and terminates the City of Franklin as a party defendant in this matter.

As discussed above, Plaintiff requested that the Court dismiss state-law claims against Defendant Rockdale County. Accordingly, the Court has dismissed the negligent supervision claim against Rockdale County and thus the entirety of Count Six of Plaintiff's amended complaint.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** Defendants City of Franklin, Tennessee, Tommy D. Justus, Chad D. Black, and Becky Porter's Motion to Dismiss (Dkt. 37).

Further, the Court **GRANTS in part** and **DENIES in part** Rockdale County Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 36).

The Court **DISMISSES**:

- Defendants City of Franklin, Tennessee, Tommy Justus, Rockdale County, Georgia, and Sheriff Eric J. Levett as party defendants;

- All claims against all Defendants in their official capacities;

- All claims in Counts Three, Four, and Five except Plaintiff's claims against Defendants Baker, Douglas, Porter, and Black in their individual capacities;

- Count One; and

- Count Six.

The following claims will proceed:

- Count Two (42 U.S.C. § 1983 – Malicious Prosecution) against Defendant Douglas, in his individual capacity;

- Count Three (§ 51–7–7 – False Arrest) against Defendants Baker, Douglas, Black, and Porter, in their individual capacities;

- Count Four (§ 51–7–40 – Malicious Prosecution) against Defendants Baker, Douglas, Black, and Porter, in their individual capacities; and

- Count Five (§ 51–7–20 – False Imprisonment) against Defendants Baker, Douglas, Black, and Porter, in their individual capacities.

**SO ORDERED** this 28th day of October, 2019.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE